IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRIZZI & CO AUCTIONEERS SA and PATRIZZI & CO AUCTIONEERS USA, INC., <br><br> Petitioners, <br><br> v. <br><br> SDG CORPORATION and MGL AMERICAS INC., <br><br> Respondents. | Case No. 11 C 3589 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

SDG Corporation (SDG) demanded arbitration under a software development contract with Patrizzi & Co Auctioneers SA and Patrizzi & Co Auctioneers USA, Inc. (Patrizzi). SDG claimed breach of the contract and unjust enrichment, and it requested an injunction to protect its intellectual property. Patrizzi answered and brought breach of contract and unjust enrichment counterclaims against SDG and a third-party claim for breach of contract against MGL Americas Inc. (MGL) in the arbitration proceeding.

An arbitrator ruled against Patrizzi on its counterclaims and cross-claim, awarded SDG $563,642 in damages, and assessed $287,640.30 in costs and fees against the Patrizzi companies jointly and severally. Patrizzi now moves to vacate the arbitration award under 9 U.S.C. § 10. SDG and MGL move to confirm the award under 9 U.S.C. § 9. For the reasons stated below, the Court denies Patrizzi's motion and grants SDG and MGL's motion.

## Background

In 2008, Patrizzi, an auction company specializing in watches, began to create a new business model based upon simultaneous live auctions accessible on the internet. The company needed a software platform to conduct the auctions and entered into discussions with MGL, a technology company. MGL advised Patrizzi that it designed systems similar to what Patrizzi needed. During its discussions with MGL, Patrizzi dealt with representatives of SDG, a technology firm that was in the process of merging with MGL and that had begun to use the MGL brand name in its business dealings. The parties dispute the degree to which Patrizzi was aware that SDG and MGL had not yet merged at the time that discussions of Patrizzi's software needs were ongoing. An officer of Patrizzi executed a nondisclosure agreement with SDG in February 2008, Patrizzi Arb. Ex. 2, but the Master Service Agreement (MSA) that Patrizzi S.A. signed in May 2008 stated that it was an agreement with MGL. Pet. Ex. A.

SDG developed the software Patrizzi requested, but it was not to Patrizzi's satisfaction. Patrizzi contends that the two companies never agreed to many of the specifications for the software and states that the MSA and the only completed work order listed few specifications. Pet. Ex. E. An auction testing the software in November 2008 was unsuccessful. The merger of MGL and SDG was never completed. In January 2009, because SDG was not going to be a part of MGL, it sent Patrizzi for signature a new MSA under SDG's name. Patrizzi instead chose to go elsewhere to obtain auction software.

After a seven day hearing, the arbitrator issued an award finding that the MSA was a valid contract that was not lacking in material terms. He also found that both

Patrizzi companies were parties to the contract, even though only Patrizzi S.A. had signed it, and that SDG was a party to the contract even though the contract only listed MGL. The arbitrator determined that Patrizzi had breached its obligations under the contract and that it was responsible for any failures in the auction software because it had frequently changed its requirements and that it was also responsible for any problems during the November 2008 test. He also found that Patrizzi had abandoned the contract with SDG not because of dissatisfaction with the software but because of changing market conditions. The arbitrator granted contractual damages and costs to SDG but denied its request for an injunction. The arbitrator also denied Patrizzi's claims. Pet. Ex. B at 15.

## Discussion

"When parties seek judicial review of an arbitrator's award, the role of the courts . . . is extremely limited." *United Food & Commercial Workers, Local 1546 v. Illinois-American Water Co.*, 569 F.3d 750, 754 (7th Cir. 2009). "Factual or legal error, no matter how gross, is insufficient to support overturning an arbitration award." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 563 (7th Cir. 2008). Courts should "not set aside an arbitral award so long as the arbitrator interpreted the parties' agreement *at all*." *Prostyakov v. Masco Corp.*, 513 F.3d 716, 723 (7th Cir. 2008).

The sole bases for vacating an arbitration award are contained in 9 U.S.C. § 10(a). *Affymax, Inc. v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, _ F.3d _, 2011 WL 4634222, at *2 (7th Cir. 2011). That subsection states:

> In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

> 1) where the award was procured by corruption, fraud, or undue means;
> 2) where there was evident partiality or corruption in the arbitrators, or either of them;
> 3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> 4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Patrizzi presents five arguments for overturning the arbitrator's award: (1) the arbitrator refused to hear pertinent and material evidence; (2) the arbitrator exceeded his powers by manifestly disregarding the law of contracts, unjust enrichment, and piercing the corporate veil; (3) the arbitrator exceeded his powers by awarding SDG damages on a *quantum meruit* theory that neither party had requested or discussed; (4) the arbitrator exceeded his powers by allowing SDG to show an exhibit that was not one of those the parties had agreed to; and (5) the arbitrator displayed evident partiality against Patrizzi during the hearing.

1. **Refusal to hear evidence**

During the arbitration hearing, Patrizzi attempted to offer as an exhibit a financial report from MGL's website. The report that stated that SDG was a recently acquired subsidiary of MGL. It included testimonials from employees of SDG describing how their work had changed since MGL's acquisition of SDG. Pet. Ex. Q at 14, 61, 79–80. Patrizzi states that it wanted to use the report to show that it had researched MGL's business and performance; that it wanted to contract with Mgl, not SDG; and that SDG was not a party to the contract or had fraudulently induced Patrizzi to enter into a contract with it.

The arbitrator did not allow Patrizzi to introduce the financial report. The parties agree that the report was not admitted because it was not on a list of exhibits that the parties had prepared prior to the arbitration. The incomplete transcript of the hearing presented by Patrizzi also indicates that the arbitrator was concerned that the proffered exhibit was not immediately available. Pet. Ex. P. at 1665.

"'Every failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award.'" *Flender Corp. v. Techna-Quip Co.*, 953 F.2d 273, 280 (7th Cir. 1992) (quoting *Hoteles Condado Beach v. Union de Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir. 1984)). "It is when the exclusion of relevant evidence actually deprived a party of a fair hearing that it is appropriate to vacate an arbitral award." *Slaney v. Int'l Amateur Ath. Fed'n*, 244 F.3d 580, 592 (7th Cir. 2001) (analyzing New York Convention rule that denies enforcement of arbitration award if a party "was otherwise unable to present his case" and citing cases under 9 U.S.C. § 10, including *Hoteles Condado* (emphasis omitted)).

The exclusion of the report did not deprive Patrizzi of a fair hearing. There was other evidence showing that Patrizzi thought that SDG was a subsidiary of MGL, including the testimony of one of Patrizzi's executives who had read MGL reports stating that the two companies had merged and had been informed of the same by a SDG employee. Pet. Ex. H at 1656–59. Patrizzi's lawyer argued only that the financial report would have shown why Patrizzi executives thought that SDG and MGL had merged. Pet. Ex. P. at 1664. Even without the financial report, however, the arbitrator's award acknowledged that SDG and MGL had begun to represent that they had merged before the merger was actually completed. Pet. Ex. B at 3 ¶¶ 6–7.

5

Patrizzi now argues that the financial report would have shown that SDG and MGL had merged before Patrizzi entered into the contract and that Patrizzi wanted to contract with MGL because of its "global reach and reputation." Pet. Br. at 6. But it is unclear, and Patrizzi does not explain, how either of these facts would undermine the arbitrator's findings. Patrizzi's argument is unpersuasive.

**2.      Manifest disregard of the law**

Patrizzi argues that the arbitrator manifestly disregarded three different areas of Illinois law, which he was obliged to follow because of the MSA's choice-of-law clause. It claims that he ignored the rule that a contract is not enforceable when it lacks material terms, law requiring that unjust-enrichment damages be based on the defendant's gain, and law on piercing the corporate veil that requires a showing that Patrizzi S.A. was a dummy or sham corporation controlled by Patrizzi USA.

Manifest disregard of the law, however, is grounds for vacating an arbitration award only if the arbitrator "directs the parties to violate the legal rights of third persons who did not consent to the arbitration." *Affymax*, 2011 WL 4634222, at *2. Legal errors by the arbitrator, even egregious errors, are not grounds for vacating the award. *Halim*, 516 F.3d at 563; *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 579 (7th Cir. 2001).

The arbitrator was obliged by the contract to apply Illinois law to the dispute. If he had not done so, the award could be vacated. *George Watts & Son*, 248 F.3d at 579. But there is no indication in the award that the arbitrator ignored Illinois law. In addition, the arbitrator was not required to state affirmatively that he was applying Illinois law. *See Affymax*, 2011 WL 4634222, at *3.

3.  *Quantum meruit*

Patrizzi argues that the arbitrator exceeded his power because he determined that SDG would be entitled to recover under a *quantum meruit* theory. Patrizzi contends that neither party had discussed *quantum meruit* and that it was given no opportunity to address that point.

In his award, the arbitrator stated:

> Since the evidence presented establishes the MSA as an enforceable agreement, SDG's damages must flow from [Patrizzi]'s breach of that agreement and not from SDG's unjust enrichment claim. If there was no enforceable contract, then under the evidence presented SDG would be entitled to damages for unjust enrichment and/or *quantum meruit*.

Pet. Ex. B at 14 ¶ 16(b). It is clear that the arbitrator awarded damages based on breach of contract. He offered unjust enrichment or *quantum meruit* only as an alternative basis for damages if there had been no enforceable contract. For this reason, even if the arbitrator exceeded his authority by discussing *quantum meruit*, any error was harmless.

4.  **SDG's exhibit**

Patrizzi argues that the arbitrator exceeded his power by allowing SDG's lawyer to introduce an exhibit that the parties had not agreed would be presented. Before trial, the parties agreed with the arbitrator on a schedule for exchanging exhibits and resolving objections to them; they also prepared exhibit lists. Pet. Ex. F at 3 ¶ 9. SDG did not include Patrizzi's website as an exhibit during this process. Despite this, SDG's attorney referred to it during his opening statement and displayed it to the arbitrator. In particular, SDG's attorney referred to a demonstration form of the auction software that SDG had developed that was on Patrizzi's website, attempting to show the arbitrator

7

that SDG's program worked and that Patrizzi was still making some use of it. Pet. Ex. G. Patrizzi states that it had no advance notice that SDG would use the website at the hearing.

Patrizzi claims that the arbitrator lacked the authority to admit the exhibit contrary to the parties' agreement regarding the admission of exhibits. SDG argues, however, that the website was not formally admitted as an exhibit but was only briefly mentioned and displayed during its counsel's opening statement. The Court agrees. For this reason, any error was harmless.

In addition, the Rules of the American Arbitration Association (AAA), which the contract required the arbitrator to follow, require the arbitrator "to determine the admissibility, relevance, and materiality of the evidence offered." AAA Commercial Arbitration R. 31(b); *see* Pet. Ex. A ¶ 10.9. "[A] court can modify an arbitrator's decision under section 10(a)(4) only if the arbitrator exceeds the powers delegated to him by the parties." *Eljer Mfg. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1255–56 (7th Cir. 1994). The parties, by deciding to use AAA rules, gave the arbitrator the authority to make evidentiary decisions. He did not exceed his powers by exercising that authority.

Patrizzi argues that *NHL Players' Ass'n v. NHL*, 30 F. Supp. 2d 1025 (N.D. Ill. 1998), reached a different result. In that case, the parties to the arbitration and the arbitrator agreed not to present or consider evidence of a previous negotiation. The arbitrator nevertheless considered such evidence. The court vacated the award because the arbitrator had exceeded his authority. *Id.* at 1026–29. Here, by contrast, the parties agreed only to a schedule for exchanging copies of exhibits, and SDG simply failed to list Patrizzi's website as a possible exhibit. There was no express agreement

8

not to discuss or consider Patrizzi's website, much less an agreement by the arbitrator not to consider evidence of whether SDG's software functioned.

**5.     Evident partiality**

Patrizzi's final argument is that the arbitrator showed evident partiality because he allowed SDG to display Patrizzi's website during its opening statement but did not allow Patrizzi to introduce MGL's financial report. As discussed above, neither the website nor the report was on pretrial lists of exhibits the parties had generated. Patrizzi claims that the differential treatment shows that the arbitrator was biased in favor of SDG.

"[E]vident partiality exists when an arbitrator's bias is direct, definite[,] and capable of demonstration rather than remote, uncertain, or speculative." *Harter v. Iowa Grain Co.*, 220 F.3d 544, 553 (7th Cir. 2000) (internal quotation marks omitted). To display evident partiality, the arbitrator must commit "acts that simultaneously show support for one side and disregard the rules." *Trustmark Ins. Co. v. John Hancock Life Ins. Co.*, 631 F.3d 869, 873 (7th Cir. 2011).

The two situations were not parallel. SDG only briefly showed the website while making its opening statement. It did not formally ask that the website be admitted as an exhibit, nor is there any indication the arbitrator considered it as having been admitted in evidence. By contrast, Patrizzi offered the financial report into evidence as an exhibit. In addition, the hearing transcript excerpts that Patrizzi has presented reflect that the arbitrator stated, and Patrizzi's lawyer agreed, that unlike the website, the financial report that Patrizzi sought to present was not available in the hearing room at the time that Patrizzi sought to introduce it. Pet. Ex. P at 1665. Given the differences between

9

the two pieces of evidence, the arbitrator did not show "evident partiality" via the two rulings.

Patrizzi also argues that the arbitrator was partial when he "ignored" evidence that SDG's software did not work and did not meet Patrizzi's specifications. Pet. Br. at 18. But there is nothing to suggest that the arbitrator declined to consider this evidence, let alone that he did so out of bias against Patrizzi. Rather, the arbitrator considered it but found other evidence more persuasive. Patrizzi disagrees with the arbitrator's factual conclusions, but an alleged factual error does not allow the Court to overturn the arbitration award. *Halim*, 516 F.3d at 563.

## Conclusion

For the reasons stated above, the Court grants SDG and MCL's motion to confirm the arbitration award [docket no. 14] and denies Patrizzi's petition to vacate the award [docket no. 1]. The Court directs the clerk to enter judgment confirming the arbitration award.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 25, 2011